

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **LAURA TRITT** | § | Case No. 12-42446 |
| xxx-xx-2744 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| JAMES C. TRITT, III, | § | |
| CURTIS M. LOVELESS, | § | |
| DARCY E. LOVELESS, and | § | |
| LOVELESS & LOVELESS, | § | |
| Attorneys at Law, L.P. | § | |
| | § | |
| Plaintiffs | § | Adversary No. 12-4186 |
| | § | |
| v. | § | |
| | § | |
| LAURA TRITT | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION</u>

ON THIS DATE the Court considered the Motion for Partial Summary Judgment

filed by the Plaintiffs, James C. Tritt, III ("Plaintiff"), Curtis M. Loveless, Darcy E.

Loveless, and Loveless & Loveless, Attorneys at Law, L.P.[1], plaintiffs in the above-

referenced adversary proceeding and the competing Motion for Summary Judgment filed

by the Defendant, Laura Tritt ("Defendant" or "Debtor"), and the respective responses in

---

[1]  In order to avoid needless confusion derived from the common surname, the Court will
hereafter reference James C. Tritt, III simply as the "Plaintiff" and, although they certainly enjoy formal
standing as plaintiffs as well, the Court will reference Curtis M. Loveless, Darcy E. Loveless, and
Loveless & Loveless, Attorneys at Law, L.P. collectively as the "Loveless Law Firm."

opposition and replies filed to each motion.  The Plaintiffs' complaint seeks a

determination of whether particular debts owed to them by the Defendant-Debtor is

excepted from discharge pursuant to 11 U.S.C. §523(a)(5), (a)(6)[2], and (a)(15).  Upon due

consideration of the pleadings, the proper summary judgment evidence submitted by the

parties, and the relevant legal authorities, the Court concludes that the Plaintiffs have

demonstrated that there is no genuine issue as to any material fact and that they are

entitled to judgment as a matter of law that the debts owed to each of them by the

Defendant arising from each of the three referenced orders issued by the 431st Judicial

District Court are each non-dischargeable under § 523(a)(15).[3]  Thus, the Plaintiffs'

Motion for Partial Summary Judgment shall be granted in part, denied in part, and the

remaining portions shall be dismissed as moot.  The Defendant's Motion for Summary

Judgment shall be granted in part as to the Plaintiffs' claim for attorney's fees under

Count 4 of the Plaintiffs' First Amended Complaint and denied in all other respects.

---

[2]  The Plaintiffs' motion for partial summary judgment does not address their affirmative claims for relief under 11 U.S.C. §523(a)(6), although the Defendant's motion seeks summary judgment on that cause of action as well.

[3]  This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

## Factual and Procedural Background[4]

The Plaintiff, James C. Tritt, III, and the Debtor-Defendant, Laura Tritt, were divorced by entry of a Final Decree of Divorce on April 17, 2008 (the "Divorce Decree") issued by the 158th Judicial District Court in and for Denton County, Texas under cause no. 2007- 21048-157 (the "Family Law Case").[5]  During their marriage, the Plaintiff and Defendant had two children, S.A.T. and J.C.T, and the 30-page Divorce Decree contained detailed provisions regarding the division of the marital property and the rights and duties of each parent as a joint managing conservator so as to effectuate the best interest of the two children of the marriage.

Throughout the Family Law Case, including the divorce, the modification of the final decree, enforcement actions and any other actions, the Loveless Law Firm represented the Plaintiff.  At all relevant times, the Plaintiff was responsible for the payment of all fees, expenses and costs of the Loveless Firm incurred with regard to the Family Law Case and for all matters in which it represented him, regardless of whether any legal fees, expenses and costs were ultimately awarded in the name of the Loveless Firm against the Defendant in any subsequent order or judgment in the Family Law Case.[6]

On December 14, 2010, after the Defendant had initiated a modification action

---

[4] The facts presented are those which stand uncontested by and among the parties and are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

[5]  Plaintiff's Ex. 1-A.

[6]  Plaintiff's Ex. 1-B.

against him, the Plaintiff filed a Counter-Petition to Modify Parent-Child Relationship against the Defendant in the Family Law Case,[7] seeking modification of the provisions addressing support and access to the children (the "Modification Litigation").[8]  The Modification Litigation triggered a number of different litigation disputes between the parties, most of which are irrelevant to the present adversary, except to the extent that they form the foundation of the ultimate fee award granted in that Litigation.[9]

On January 27, 2011, the Defendant filed an Emergency Motion to Protect Children and Request for Temporary Restraining Order.  After a contested hearing, the Family Court issued an "Order Denying Emergency Motion and Ordering Attorney's Fees and Sanctions Against Laura Tritt" (the "Sanctions Order") on February 21, 2012.[10]  In denying the requested relief, the Family Court made the following findings:

> 2.  The Court further finds that LAURA TRITT'S emergency request for a temporary restraining order is frivolous and filed in bad faith.  The Court finds that it was necessary for JAMES C. TRITT, III to hire the firm of Loveless & Loveless, Attorneys at Law, L.P. to protect and defend him from this motion,

---

[7]  A court order that provides for the conservatorship, support, or possession of and access to a child may be modified by filing a suit for modification in the court with continuing, exclusive jurisdiction.  See 6 TEX. FAM. CODE ANN. §156.001, et. seq. (Vernon 2014).  By this time, the continuing jurisdiction over the Family Law Case had been transferred from the 158th Judicial District Court to the 431st Judicial District Court in Denton County (the "Family Court").

[8]  The modification motion also initially sought relief as to disposition of certain assets, some of which were potentially alleged to be undivided marital property assets by Laura Tritt (the "Luna Vista Case").  The Luna Vista Case was severed from the conservatorship issues and subsequently settled.  It has no impact upon the issues presented to this Court.

[9]  See Family Court docket sheet, submitted as Defendant's Ex. F.

[10]  Plaintiff's Ex. 1-D; Defendant's Ex. E.

and that the sum of $1,035.00 of attorney's fees and expenses were incurred in this connection.  The Court finds that the fees incurred were reasonable and necessary and that good cause exists to award JAMES C. TRITT, III a judgment in that amount.

3.  The Court further finds that LAURA ANN TRITT should be sanctioned an additional one thousand dollars ($1,000.00) for her conduct pursued in bad faith.  Therefore, IT IS ORDERED that JAMES C. TRITT, III should be awarded the sum of an additional one thousand dollars ($1,000.00) in sanctions against LAURA TRITT.

The Family Court further ordered that, as to both awards, the Plaintiff was authorized to "enforce this judgment . . . by any means available for the enforcement of a judgment for debt."[11]

Another dispute occurring within the confines of the Modification Litigation between the parties resulted in the Family Court's entry of a "Judgment of Contempt and Commitment Order" on March 19, 2012 (the "Contempt Judgment").[12]  Finding that the Debtor-Defendant had engaged in certain prohibited behavior toward each of the children,[13] that she had violated numerous sections of the Protective Order issued in the

---

[11] *Id.* at ¶ 4 and 5.

[12]  Plaintiff's Ex. 1-E; Defendant's Ex. D.

[13] The Family Court had previously adopted a standing order which, in part, precluded litigating parents from engaging in certain behavior as to affected children and which took effect as an injunction in this Family Law Case.  Specifically, the Family Court injunction encompassed the following:

    1. <u>NO DISRUPTION OF CHILDREN</u>.  Both parties are ORDERED to refrain from doing the following acts concerning any children who are subjects of this cause:

Family Law Case to which she had earlier agreed,[14] and further directing that she

reimburse certain health care expenses of the children, the Family Court found that the

Debtor-Defendant was in contempt of court arising from her behavior toward her children

and toward the Plaintiff and his spouse and, in addition to specifying certain periods of

confinement in the local county jail, the Family Court entered the following provision:

> IT IS ORDERED that judgment is awarded to JAMES COWAN TRITT, III
> in the amount of Nine Thousand One Hundred Eighty-Three Dollars and
> Seventy-Five Cents ($9,183.75) for attorney's fees, expenses, and costs
> incurred by him, with interest at six percent (6%) per year compounded
> annually from the date the judgment is signed until paid. The judgment, for
> which let execution issue, is awarded against Respondent, LAURA ANN
> TRITT, and LAURA ANN TRITT is ORDERED to pay those fees, expenses,
> costs and interest, by cash, cashier's check, or money order, directly to JAMES
> C. TRITT, III . . . .[15]

---

1.4  Disturbing the peace of the children.

1.5  Making disparaging remarks about each other or the other person's
family members, to include but not be limited to the child's
grandparents, aunts, uncles or stepparents.

1.6  Discussing with the children, or with any other person in the
presence of the children, any litigation related to the children or the
other party.

As stated, the Family Court found that the Debtor-Defendant had violated each of these three
prohibitions as to each child. *Id.*

[14] Generically, the Protective Order, which had been previously entered in the case on January
21, 2011, had precluded the Debtor-Defendant from engaging in harassing or threatening behavior
toward the Plaintiff and his spouse, including prohibiting the Defendant from any appearance at their
home and places of business.

[15]  *Id.*

That particular Modification Litigation between these parties concluded with the entry of an "Order in Suit to Modify Parent-Child Relationship"which was entered by the Family Court on June 8, 2012 (the "Family Case Order").[16]  As a part of its 24-page order, the Family Court denied the Defendant's modification request, found that the remaining allegations in the Plaintiff's counter-petition to modify were true and that modification of the existing parent-child relationship as requested by the Plaintiff was "in the best interest of the children."[17]  Among a number of substantial changes to the detailed parameters of the parent-child relationship originally established by the Divorce Decree, the Family Case Order also contained the following provision:

> 74.  The Court finds that it was necessary for JAMES C. TRITT, III to retain Curtis M. Loveless, Darcy E. Loveless, and the firm of Loveless & Loveless, Attorneys at Law, L.P. to protect and preserve the best interests of the minor children, including the minor children's physical or emotional health or welfare.  IT IS THEREFORE ORDERED that good cause exists to award Curtis M. Loveless, Darcy E. Loveless, and the firm of Loveless & Loveless, Attorneys at Law, L.P. judgment in the amount of one hundred fifteen thousand four hundred thirty two dollars and sixty one cents ($115,432.61) for attorney's fees, expenses, and costs incurred by JAMES C. TRITT, III, with interest at the legal rate from the date the judgment is signed until paid.  The judgment, for which let execution issue, is awarded against LAURA ANN

---

[16]  Plaintiff's Ex. 1-C; Defendant's Ex. C.

[17]  *Id.* at ¶¶ 7 and 8.  The Family Court further found that the changes imposed by its Modification Order pertained "to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children. . . .."

TRITT.  Curtis M. Loveless, Darcy E. Loveless, and the firm of Loveless & Loveless, Attorneys at Law, L.P. may enforce this judgment for fees, expenses, and costs in their own name by any means available for the enforcement of a judgment for debt.[18]

Although she has apparently complied with other aspects of the Family Case Order, the Defendant-Debtor has not paid any amounts awarded to the Plaintiff or to the Loveless Law Firm for attorneys' fees, expenses, costs or interest arising from the entry of the Family Case Order, the Sanctions Order, and/or the Contempt Judgment.  On September 4, 2012, the Debtor-Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  The Plaintiffs subsequently initiated this adversary proceeding and have filed this Motion for Partial Summary Judgment, asserting that there are no genuine issues of material fact and that, under such uncontested facts, they are entitled to a determination that the attorney's fee awards arising from the Family Case Order, the Sanctions Order, and/or the Contempt Judgment, respectively, issued during the Modification Litigation are nondischargeable as a domestic support order under § 523(a)(5) and/or as a divorce-related obligation under § 523(a)(15).[19]  The Debtor-Defendant has filed a competing motion for summary judgment, seeking a summary judgment declaration that all of the fee awards have been discharged pursuant to the

---

[18]  *Id*. at ¶ 74.

[19]  The Plaintiffs' amended complaint also contains an asserted cause of action under 11 U.S.C. §523(a)(6) which is not addressed by their Motion for Partial Summary Judgment.  Because of the summary judgment granted herein, the Court need not reach the §523(a)(6) claim.

discharge order entered on April 5, 2013 in the Debtor-Defendant's Chapter 7 bankruptcy case.  Ignoring attempts by both sides to insert self-serving characterizations of events as uncontested facts, the Court's review of the affidavits and documentation contained in the summary judgment record submitted by both parties establishes that there is an absence of any genuine issue of material fact with regard to those particular facts that are integral to a determination of nondischargeability in this context.

## Discussion

*Summary Judgment Standard*

The parties bring their competing motions for summary judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).

Any party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.  *Id.* at 323.  As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the  . . .  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended or a sham." *Bazan ex. rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original).  "A fact is material only if its resolution would affect the outcome of the action. . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009).

The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial.  As the plaintiff seeking a determination regarding the dischargeability of a debt, the Plaintiffs bear the ultimate burden of proof at trial regarding their claims. As the party carrying the burden of persuasion at trial, the Plaintiffs "must support [their] motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle [them] to a directed verdict if not controverted at trial." *Id.* at 331 (Brennan, J., dissenting); *Int'l Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1264–65 (5th Cir.1991).

With regard to the Defendant's motion for summary judgment, since the burden of persuasion on that motion rests on the non-moving party, "the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways.  First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim.  Second, the moving party may demonstrate to the Court that

-10-

the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477, U.S. at 322-323 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (internal citations omitted).

If either motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing that motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.  *Id*. at 248-49.  In so demonstrating, the non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc*., 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts."  *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.  *Jacobs v. City of Port Neches,*  7 F.Supp.2d 829, 833 (E.D. Tex.1998) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)).  However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence;  rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49.

The record presented is reviewed in the light most favorable to the non-moving party. *Matsushita,* 475 U.S. at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587, *citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968). Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

A determination of whether a particular debt is dischargeable under the Bankruptcy Code is a question of federal law, although state law may inform that determination. *Grogan v. Garner*, 498 U.S. 279, 284 (1991); *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004). In viewing the dischargeability of debts in the domestic relations sphere in particular, the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005 broadened the scope of debts potentially excepted from discharge in a bankruptcy case. *Morris v. Allen (In re Morris)*, 454 B.R. 660, 662 (Bankr. N.D. Tex. 2011) ["BAPCPA was meant to expand the universe of divorce-related debts excepted from discharge under 11 U.S.C. §523(a)(5) and 11 U.S.C. §523(a)(15)."]; *Wodark v. Wodark (In re Wodark)*, 425 B.R. 834, 838 (B.A.P. 10th Cir. 2010) ["One of Congress's overarching themes in enacting BAPCPA was to redefine and reinforce the ability of non-debtor former spouses to recover both support and property settlement obligations from debtors in bankruptcy."].

*Non-Dischargeability Under 11 U.S.C. §523(a)(15)*

Section 523 of the Bankruptcy Code obviously governs the determination of whether the Defendant's debts to the Plaintiff and to the Loveless Law Firm are rendered non-dischargeable.  In regard to obligations arising from domestic relations cases, §523(a)(5) exempts from discharge any "domestic support obligation" as that term is defined by §101(14A) of the Bankruptcy Code.[20]  However, even when an obligation cannot technically meet the definition of a domestic support obligation under §101(14A), the Bankruptcy Code now provides that an obligation

> . . .to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a

---

[20]  Section 101(14A) defines "domestic support obligation" as:

"[A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provisions of this title, that is–

> (A) owed to or recoverable by--
> > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support ... of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
> > (i) a separation agreement, divorce decree, or property settlement agreement;
> > (ii) an order of a court of record; or
> > (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; ....

11 U.S.C. § 101(14A) (West Supp. 2013).

divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. . ."[21]

is also excepted from discharge by §523(a)(15) — a subsection of §523(a) that was substantially amended by BAPCPA to broaden the scope of family law debts that could not be affected by the granting of a bankruptcy discharge.[22]  These statutory changes, at least as applied  in a Chapter 7 case,[23] render a DSO analysis unnecessary if a party can demonstrate that a particular debt would be nondischargeable under the less stringent evidentiary requirements of §523(a)(15).  *See, e.g., Berse v. Langman (In re Langman)*, 465 B.R. 395, 405 (Bankr. D.N.J. 2012) (internal quotations omitted) ["As a practical consequence, it is now no longer necessary for bankruptcy courts to determine the exact extent to which a state court matrimonial judgment constitutes a 'domestic support obligation' if the plaintiff can demonstrate that the judgment would be nondischargeable in any event under § 523(a)(15)"].  As one major treatise has noted,

---

[21]  11 U.S.C. §523(a)(15) (West Supp. 2013).

[22]  *See Picco v. Wise (In re Wise)*, 2012 WL 5399075, at *5-6 (Bankr. E.D. Tex., Nov. 5, 2012) for a brief description of how BAPCPA altered the language of §523(a)(15) by eliminating any consideration of a debtor's "ability to pay" or the use of any "balancing test."

[23]  "[I]n chapter 13 cases, debts encompassed by section 523(a)(5) are not dischargeable, while debts encompassed by section 523(a)(15) are dischargeable, unless the debtor obtains a hardship discharge under section 1328(b)." 4 COLLIER ON BANKRUPTCY ¶ 523.23 at p.523-126 (16th ed. 2013); *In re Young*, 425 B.R. 811, 815 (Bankr. E.D. Tex. 2010).  Among other important distinctions, in the absence of an agreement otherwise, a DSO must be addressed as a priority claim in a Chapter 13 plan pursuant to §1322(a)(2) due to its priority status under §507(a)(1)(A).  A failure to pay a DSO in the post-petition period also precludes confirmation under §1325(a)(8) and constitutes an independent ground for dismissal of the Chapter 13 case under  §1307(c)(11).

> Thus, in individual cases under chapters 7 and 11 and in cases under chapter
> 12, all of which base dischargeability on the subsections of section 523(a), the
> distinction between a domestic support obligation and other types of
> obligations arising out of a marital relationship is of no practical consequence
> in determining the dischargeability of the debt.

*See* 4 COLLIER ON BANKRUPTCY ¶ 523.23 at p.523-126 (16th ed. 2013).

Therefore, the Court will initially presume that none of the referenced debts can qualify as a "domestic support obligation" that would be rendered nondischargeable under §523(a)(5), and will instead address the dischargeability of the referenced debts pursuant to 11 U.S.C. §523(a)(15).  In order for a non-DSO debt to be excepted from discharge under §523(a)(15), the undisputed facts must demonstrate that: (1) the Debtor-Defendant owes a debt to a spouse, former spouse, or child which (2) was incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record.  The Court concludes that the requirements imposed for a determination of nondischargeability under §523(a)(15) are fulfilled by each of the three fee orders at issue.   With regard to whether the relevant debts are owed to either a "spouse, former spouse, or child," it is uncontested that the attorney's fee awards arising under both the Sanctions Order and the Contempt Judgment issued by the Family Court are expressly assessed against the Defendant in favor of the Plaintiff.  As to the attorney's fees awarded directly to the Loveless Law Firm pursuant to ¶ 74 of the June 8, 2012 "Family Case Order,"[24] the Defendant does not seriously contest the growing consensus

---

[24]  Plaintiff's Ex. 1-C; Defendant's Ex. C at ¶ 74.

-15-

in the jurisprudence construing §523(a)(15) that a court award of attorney's fees to an

attorney for a non-debtor ex-spouse in post-divorce litigation between the parties should

be construed as a debt of the former spouse.  "Whether a fee is due to a former spouse or

to the attorney of a former spouse has been determined to be irrelevant in the application

of this portion of 523(a)(15)." *Howerton v. Howerton (In re Howerton)*, 2013 WL

4505368, at *3 (Bankr. N.D. Ga., July 19, 2013) (*citing Koscielski v. Koscielski (In re

Koscielski*), 2011 WL 338634 (Bankr. N.D. Ill., Jan. 31, 2011));  *Morris,* 454 B.R. at 663

["The majority of cases . . . have rejected the literal interpretation of section 523(a)(5) and

(15) and have expanded the statutory language to cover the attorneys of the former spouse

on the basis that the former spouse's expenses of collection are part of the underlying

obligation and the debt is actually owed to the former spouse."]; *Panos & Assoc., LLC v.

Mitchell (In re Mitchell)*, 2013 WL 2422694 at * 6 (Bankr. N.D. Ill. June 4, 2013)

[finding that a "non-debtor spouse's attorney's fees awarded directly to the attorney satisfy

the requirement in § 523(a)(15) that the debt be to a spouse, former spouse, or child of the

debtor."]; *Contreras-Eckstrom v. Eckstrom (In re Eckstrom)*, 2011 WL 5591648 (Bankr.

N.D. Cal., Nov. 16, 2011) ["Direct payments to an attorney may be deemed to be an

obligation to the former spouse where it would be exalting form over substance to fail to

treat it as such."].  This recognition becomes particularly compelling when, as in this

case, the fee award will satisfy a financial obligation owed to the law firm by the former

spouse or result in reimbursement to the former spouse for amounts previously required to

be expended for legal services.  Thus, the attorney's fee awards arising under all three

orders issued by the Family Court constitute debts that are owed "to a spouse, former

spouse, or child" for the purposes of §523(a)(15).

As to the remaining §523(a)(15) factor, each debt owing to the Plaintiff and/or the

Loveless Law Firm for the recovery of attorney's fees under the three Family Court

orders, respectively, was clearly assessed against, and incurred by, the Defendant "in

connection with a . . . divorce decree or other order of a court of record."  As one court

recently observed in finding legal fees awarded in a post-divorce custody modification

suit to be nondischargeable under §523(a)(15):

> [T]he defendant's argument that the plaintiff is not entitled to a favorable
> §523(a)(15) judgment because the legal fees were not incurred during a
> divorce proceeding is unpersuasive.  The defendant's reading of §523(a)(15)
> is too myopic. Section 523(a)(15) is broader than the defendant alleges
> because it addresses debt that is incurred "in the course of a divorce or
> separation *or in connection with* a separation agreement, divorce decree or
> *other order of a court of record.*"

*Lustgarten v. Vann (In re Vann)*, 2014 WL 505257 at *3 (Bankr. D. Conn. Feb. 6, 2014)

(emphasis in original).  *See also, Taylor v. Taylor (In re Taylor)*, 478 B.R. 419, 427

(B.A.P. 10th Cir. 2012), *aff'd*, 737 F.3d 670 (10th Cir. 2013) [finding that a debt to an ex-

spouse arising from an award of overpaid support and attorney's fees in a spousal support

modification action arose "in connection with a separation agreement, divorce decree or

other order of a court of record"]; *Morris*, 454 B.R. at 663 [finding that the prosecution of

a post-divorce enforcement proceeding was made "in connection with" the prior divorce

decree]; *Reissig v. Gruber (In re Gruber),* 436 B.R. 39, 44 (Bankr. N.D. Ohio 2010)

[finding that an award of attorney's fees issued in a post-divorce modification action to

modify support and the parenting plan was made in a "post-divorce proceeding," thus

qualifying the award as a debt incurred "in connection with" the parties' divorce decree];

*Howerton,* 2013 WL 4505368, at *4 [holding that fees awarded to ex-spouse in defending

her rights against a post-divorce modification attempt was issued "in connection with" a

divorce decree]; *Davis v. Hosterman (In re Hosterman)*, 2007 WL 2973592 at *6 (Bankr.

N.D. Okla., Oct. 9, 2007) [post-divorce enforcement of hold-harmless agreement was "in

connection with" divorce decree].  Thus, the Defendant's contention that §523(a)(15)

cannot encompass an order arising from a suit to modify the terms of a parent-child

relationship established two years earlier because it is not an original proceeding to

establish such rights must be rejected.[25]  Regardless of whether the action was initiated to

enforce compliance with the existing decree (enforcement), *Fisher v. Santry (In re*

*Santry)*, 481 B.R. 824, 831-32 (Bankr. N.D. Ga. 2012) or to alter the existing decree

(modification), *Howerton*, 2013 WL 4505368, at *3, the attorney's fees were undoubtedly

awarded were *"in connection with"* a divorce decree or other order of a court of record, as

that term is used in §523(a)(15).

---

[25]  *Picco v. Wise (In re Wise)*, 2012 WL 5399075 (Bankr. E.D. Tex., Nov. 5, 2012) does not hold
otherwise.  The fact that the debt in *Picco* happened to arise from a final divorce decree and that
language in that opinion references that fact does not preclude the proper application of the statute in
other appropriate contexts.

Equally erroneous is any contention that §523(a)(15) is inapplicable to the Defendant's debts because of the manner in which they were engendered.  Sanctions awarded against a debtor for engaging in bad faith litigation tactics, such as in the Sanctions Order in this case, are not excluded from the scope of §523(a)(15).  *Eckstrom*, 2011 WL 5591648 at *2 [$3,000 discovery sanction award to ex-spouse's divorce attorney arising from the debtor's misconduct]; *Gruber,* 436 B.R. at 43 [$5,411 fee award made "for the express purpose of compensating the Plaintiff for the Defendant's improper litigation tactics"].  The same analysis applies to fee awards arising from contempt proceedings, *Stoltz v. Cavagnetto (In re Cavagnetto)*, 2012 WL 6585560 at *5 (Bankr. N.D. Ill. Dec. 11, 2012), *aff'd in part, rev'd in part and remanded sub nom., Cavagnetto v. Stoltz*, 2013 WL 5926124 at *4 (N.D. Ill. Nov. 4, 2013)[affirming as to nondischargeability under §523(a)(15) of both sanctions for filing frivolous pleadings and a contempt judgment for falsification of documents regarding childcare expenses], particularly when, as in this instance, the fee award compensates the former spouse for the necessity of bringing action to compel compliance with the Family Court's standing order regarding the propriety of parental behavior toward the children.

Finally, the Defendant urges the Court to compare the economic positions of the parties and the relative hardships that are imposed upon her as a result of these fee awards.  However, such economic examinations and financial comparisons are no longer relevant under §523(a)(15).  *Baker v. Baker (In re Baker)*, 2013 WL 2606406 at *3

(Bankr. D.N.M., June 11, 2013).[26]  The Court is no longer authorized to balance the economic equities between the parties as a result of the BAPCPA reforms which now provide a greater degree of protection for debts arising from domestic relations litigation. Therefore, such issues cannot legitimately create a genuine issue of material fact that will preclude summary judgment.  *Anderson*, 477 U.S. at 248 ["The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."]; *Wiley,* 585 F.3d at 210.

*Adversary Attorney's Fees and Court Costs*

The Plaintiffs also seek summary judgment for recovery of attorney's fees in the amount of $9,000.00 incurred in the prosecution of this adversary proceeding, plus contingent awards for various levels of appellate review.  That request is supported by the affidavit of Carol Lynn Wolfram and James C. Tritt, III.  The Defendant also seeks an award of attorney's fees for fees incurred in the defense of this action, with those fees to be quantified in a subsequent hearing.  However, neither party can demonstrate a proper statutory foundation for the entitlement of an award of attorney's fees for legal services

---

[26]  The Defendant's causation arguments come strikingly close to challenging the legal validity of the awards.  Of course, any complaint regarding the propriety or reasonableness of the awards should have been properly challenged by an appeal in the state judicial system and this Court is clearly precluded from hearing any of those complaints by the *Rooker-Feldman* doctrine.  *See generally, Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005); and in this context, *Rackley v. Rackley (In re Rackley)*, 502 B.R. 615, 624 (Bankr. N.D. Ga. 2013).

rendered in this adversary proceeding.  Accordingly, the Court will grant summary judgment for the Defendant as to Count 4 of the Plaintiffs' First Amended Complaint.

In adherence to the so-called "American Rule," attorneys' fees are not taxable as costs or recoverable as damages in an adversary proceeding unless such fees are authorized by statute or through an enforceable contract between the parties.  *First United Bank & Trust v. Buescher (In re Buescher)*, 491 B.R. 419, 439 (Bankr. E.D. Tex. 2013); *Bell v. Claybrook (In re Claybrook),* 385 B.R. 842, 854 (Bankr. E.D. Tex. 2008).  In this case, there is no contract between the parties that entitles the Plaintiff to a recovery of attorney's fees.  Neither can the Plaintiffs cite to any proper statutory authority that would entitle them to a recovery of attorney's fees for the services pertaining to the presentation of an adversary complaint seeking a determination of dischargeability.[27]  While §106.002 of the Texas Family Code created a statutory exception to the American Rule by providing for a recovery of attorney's fees necessarily incurred by a party in a suit affecting the parent-child relationship,[28] that

---

[27]  The only statutory authorization under Title 11 for an award of attorneys' fees in a dischargeability proceeding is found in 11 U.S.C. § 523(d), which gives a prevailing *debtor* a right to attorneys' fees in certain specified cases.

[28]  The Texas Family Code provides, in relevant part, that:

(a) In a suit under this title (i.e. in a suit affecting a parent-child relationship), the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney.

(b)  A judgment for attorney's fees and expenses may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt.

4 TEX. FAM. CODE ANN. § 106.002 (Vernon 2014).

exception cannot be extended to authorize a recovery of additional fees under the statute when such fees are incurred, not in such a suit, but rather in an action seeking a dischargeability determination in a bankruptcy court — a scenario that the cited fee-shifting statute under Texas law simply does not contemplate.  While the Court would acknowledge that statutory attorney's fees under state law are proper to award in dischargeability litigation when that litigation also seeks the establishment of liability of a debtor-defendant under that state statutory scheme, *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998);[29] *Synergeering Group, LLC v. Jonatzke (In re Jonatzke)*, 478 B.R. 846, 869-70 (Bankr. E.D. Mich. 2012),[30] "*Cohen* did not create a common law basis for awarding attorney fees or otherwise overrule or alter how the American Rule is applied by federal courts." *Dancor Constr. Co. v. Haskell (In re Haskell)*, 475 B.R. 911, 923 (Bankr. C.D. Ill. 2012) (*citing Clark & Gregory, Inc. v. Hanson (In re Hanson),* 225 B.R. 366 (Bankr.W.D.Mich.1998)); *Headrick v. Atchison* (*In re Atchison),* 255 B.R. 790 (Bankr. M.D. Fla.2000) ["It is clear that *Cohen* does not itself create an independent right to attorney's fees for the benefit of a party who prevails in a Section 523 dischargeability proceeding."].  Thus, while state statutory law allowing for an award of attorney's fees may have been previously invoked in a pre-petition action in state court that established the liability of a debtor-defendant for a debt, there is simply no

---

[29] *Cohen* imposed liability, including the imposition of statutory attorney's fees, under the New Jersey Consumer Fraud Act.

[30] The *Jonatzke* court observed: "Thus, if a bankruptcy court liquidates a claim and also determines its dischargeability under the Bankruptcy Code, the liquidated claim may include an attorney's fee component only if the contract or a statute provides for such an award." *Jonatzke*, 478 B.R. at 870-71.

statutory vehicle by which attorney's fees subsequently incurred by such a creditor in a bankruptcy adversary proceeding to render that debt nondischargeable can be assessed against a debtor-defendant. *Renfro v. Draper (In re Draper)*, 232 F.3d 688 (9th Cir. 2000); *Jonatzke,* 478 B.R. at 869; *Adamovic v. Lazarevic (In re Lazarevic)*, 2013 WL 3934010 at *35 (Bankr. E.D. Tenn., July 29, 2013). While it might properly be considered equitable for a creditor to recover such post-petition attorney's fees when it is forced into additional litigation by a debtor's bankruptcy filing to protect its judgment against discharge, unfortunately Congress has yet to provide such a statutory vehicle under which a creditor in such circumstances can escape the impact of the American Rule. Accordingly, the Defendant's motion for summary judgment on Count 4 of the Plaintiffs' Amended Complaint shall be granted. However, court costs of $293.00 incurred in this adversary proceeding shall be awarded to the Plaintiffs and against the Debtor-Defendant.

## Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, the material facts admitted to exist under Fed. R. Bankr. P. 56 and E.D. TEX. LOCAL R. CV–56(c), the relevant legal authorities and for the reasons set forth herein, the Court concludes that there is no genuine issue as to any material fact and that the Plaintiffs are entitled to summary judgment that the debts owed to each of them, respectively, should be declared nondischargeable pursuant to 11

U.S.C. §523(a)(15).[31]  Thus, the Plaintiffs' Motion for Partial Summary Judgment will be granted to that extent and the issues raised concerning 11 U.S.C. §523(a)(5) are rendered moot.  As to the right of the Plaintiffs to an award of attorney's fees pursuant to Count 4 of the Plaintiffs' Amended Complaint, the Plaintiffs' motion for partial summary judgment shall be denied and the Defendant's motion for summary judgment shall be granted.  In all other respects, the Defendant's Motion for Summary Judgment shall be denied, save and except for her arguments pertaining to 11 U.S.C. §523(a)(5) and §523(a)(6), which shall be dismissed as moot.  Court costs of $293.00 incurred in this adversary proceeding shall be awarded to the Plaintiffs and assessed against the Debtor-Defendant.  Appropriate orders and a judgment will be entered which are consistent with this opinion.

Signed on 04/04/2014

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[31]  Thus, the Court need not address the summary judgment issues regarding §523(a)(5) nor those raised in the Defendant's motion under §523(a)(6).